## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL WESTERKAMP, *individually and on behalf of all others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendant. | Civil Action No. <br><br> 21-cv-15639 (JXN) (JRA) <br><br><br> **OPINION** |

**José R. Almonte, U.S.M.J.**

Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung"), moves to compel arbitration, dismiss Plaintiff Cheryl Westerkamp's ("Plaintiff") class action claims, and to stay this action pending arbitration (the "Motion"). ECF Nos. 10, 15, 21. Plaintiff opposes the Motion. ECF Nos. 14, 24. The Court has considered the Motion on the papers without oral argument. *See* FED. R. CIV. P. 78(b); L.Civ.R. 78.1(b). For the reasons discussed below, the Court **GRANTS** Defendant's motion to compel arbitration and to stay this action pending arbitration. The question of whether Plaintiff waived her right to assert class claims is **REFERRED** to the arbitrator.

### I.    BACKGROUND

#### A. Factual Allegations

Plaintiff initiated this putative class action on August 18, 2021, because Defendant's Galaxy Buds Pro headphones ("Earbuds"), which she purchased in April

2021, allegedly caused her an allergic reaction in her ears, resulting in pain, scabbing, flaking, and oozing, among other things.   Compl. ¶¶ 21-24, ECF No. 1.   Plaintiff alleges that Defendant was aware of the problems caused by the use of the Earbuds, which rendered them "useless," and that other customers had complained of similar issues on an online forum.   *Id.* ¶¶ 14, 54-62.   In or around July 2021, Plaintiff allegedly contacted Defendant and was advised to purchase aftermarket foam tips for the Earbuds to alleviate her symptoms.   *Id.* ¶¶ 25-26, 52, 58-60.   That proposed solution did not alleviate Plaintiff's symptoms, ultimately forcing her to stop using the Earbuds altogether.   *Id.* ¶ 26.   Accordingly, Plaintiff brings this putative class action on behalf of a nationwide class of consumers who purchased the Earbuds and who experienced similar symptoms.   Plaintiff asserts causes of action for unjust enrichment and violation of the New Jersey Consumer Fraud Act.   *Id.* ¶ 74.

### B. Notice of Arbitration Agreement

The Earbuds were packaged and sold to consumers in a box, according to a declaration by Nicole Cantwell ("Cantwell"), a Senior Manager at Samsung.   Cantwell Decl. ¶ 17, ECF No. 10-3.   The box referenced an "arbitration agreement" in two places.   *Id.* ¶¶ 17-18.   The first reference was on the label on the back of the box, which contained information about the product's terms and conditions.   *Id.* ¶ 17.   One provision toward the bottom of the box stated: "IMPORTANT INFORMATION: This product is subject to Samsung terms & conditions (including an arbitration agreement); if you open the package, use or retain the device, you accept the terms & conditions.   Information about your rights, obligations, opt-out opportunities & full

terms [is available] at www.samsung.com/us/Accessory-Legal & the enclosed materials."[1]  *Id.*; Cantwell Decl. Ex. 1; ECF No. 14 at 9.

The second reference to the arbitration agreement appeared on the inside of the box, which contained a six-page booklet entitled "Terms and Conditions" in bold font.  *Id.* ¶¶ 18-20.  Just below "Terms and Conditions," the cover page informed consumers to: "**Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference.  This document contains important Terms and Conditions.  Electronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance of these Terms and Conditions**."  *Id.* ¶ 21; Cantwell Decl. Ex. 2, ECF No. 10-5.

The second page of the booklet read: "**Important legal information**" in bold font, set apart from the rest of the text.  Cantwell Decl. ¶ 22; Cantwell Decl. Ex. 2.  Just below "Important legal information," the page read:

> **Arbitration Agreement – This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.**  The full Arbitration Agreement, Standard One-year Limited Warranty, End User License Agreement (EULA), and Health & Safety Information for your device are available online at https://www.samsung.com/us/Legal/Gear-HSGuide/.

---

[1] The back of the box contained additional information, such as the product's compatibility with smartphones, battery life, and other capabilities.  Cantwell Decl. Ex. 1, ECF No. 10-4.

Cantwell Decl. Ex. 2.

Defendant attached to the Motion a copy of the webpage containing the arbitration agreement from April 2021, when Plaintiff purchased the Earbuds. Cantwell Decl. Ex. 3, ECF No. 10-6.  Defendant avers that consumers who entered the web address provided on the outside of the Earbuds box and in the Terms and Conditions booklet would be brought to a webpage where the full text of the arbitration agreement was available.  Cantwell Decl. ¶¶ 25-26.  The top of the webpage repeated much of the information available on the second page of the booklet relating to the "binding arbitration agreement" between the consumer and Defendant and the instructions for opting out of the agreement.  Cantwell Decl. Ex. 3 at 1.  In addition, the webpage provided clickable bubbles for four items: (i) the Arbitration Agreement, (ii) the Standard Limited Warranty (the "Limited Warranty"), (iii) the End User License Agreement, and (iv) Health and Safety Information.  *Id.* at 2; Cantwell Decl. ¶ 26.

By clicking the bubble next to the phrase "Arbitration Agreement," consumers could have accessed the full text of the agreement.  Cantwell Decl. ¶ 26.  The arbitration agreement began by noting that:

> **This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung Electronics America, Inc. ("Samsung"). Electronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession of the product, constitutes acceptance of this agreement, regardless of whether you are the original purchaser, user, or other recipient of the product.**

Cantwell Decl. Ex. 3 at 2. The arbitration agreement further contained language related to the adjudication of claims, including class claims:

> **You and Samsung each agree that all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury. Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim. Specifically, without limitation of the foregoing, you shall not under any circumstances proceed as part of a class action.**

*Id.*

The arbitration agreement reserved for the arbitrator's decision "all issues of interpretation and application of [the Arbitration] Agreement." *Id.* Finally, the arbitration agreement itself also contained a similar opt-out provision to the one contained in the Terms & Conditions booklet included inside the box that the Earbuds were packaged in and at the top of the webpage containing the arbitration agreement. *Compare id.* at 3, *with* Cantwell Decl. ¶ 14. Defendant states that it maintained a record of all consumers who elected to opt out of the arbitration agreement and that it has no record that Plaintiff here opted out. Cantwell Decl. ¶ 15.

### C. The Standard Limited Warranty

In the Complaint, Plaintiff alleges that Defendant "unconscionably limit[ed] the [Limited W]arranty to not cover the [alleged] Defect." Compl. ¶¶ 64, 77, 87. Plaintiff alleges that, "even when consumers complain about the [alleged] Defect during the warranty period, Samsung has not been able to repair the defect and

5

instead encourages consumers to purchase aftermarket foam tips to try to prevent the allergic reaction from occurring." *Id.* ¶ 11.  Indeed, Plaintiff asserts that she was similarly rebuffed by Defendant.  When she contacted Defendant to discuss the allergic reaction she suffered, Defendant allegedly instructed Plaintiff to purchase aftermarket foam tips that ultimately did not alleviate her symptoms.  *Id.* ¶¶ 25-26.

On May 25, 2023, the parties submitted a copy of the Limited Warranty's language at the Court's direction.  *See* ECF Nos. 25, 27-1.  The full text of the Limited Warranty was available on the same webpage as the arbitration agreement.  *See* Cantwell Decl. Ex. 3; Cantwell Decl. ¶ 26; ECF No. 27-1.  Notably, the top of the webpage containing the Limited Warranty notified readers of the arbitration agreement.  The webpage contained language nearly identical to that found on the second page of the booklet packaged inside the Earbuds box.  *Compare* ECF No. 27-1, *with* Cantwell Decl. Ex. 3, *and* Cantwell Decl. Ex. 2.  It reads:

> **This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out of the agreement within 30 calendar days of the first consumer purchase (or use of application) by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.  For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.**

ECF No. 27-1.  A consumer navigating the webpage is presented with this language at the very top of the same webpage as the four clickable bubbles discussed *infra*.  In other words, the arbitration agreement appeared in the same document as the Limited Warranty.

On October 12, 2023, Defendant filed a motion to compel arbitration, dismiss Plaintiff's class claims, and stay all proceedings.  ECF No. 10.  The motion is now fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (citing *Seus v. Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998)).  Indeed, "federal law presumptively favors the enforcement of arbitration agreements."  *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 133 F.3d 225, 231 (3d Cir. 1998)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

To succeed on a motion to compel arbitration, the party seeking arbitration must establish that "(1) a valid arbitration agreement exists between the parties and (2) the dispute before it falls within the scope of the agreement."  *Doyle v. Ad Astra Recovery Servs., Inc.*, No. 17-cv-05233, 2018 WL 1169121, at *2 (D.N.J. Mar. 6, 2018) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 525 (3d Cir. 2009)).  Depending on the circumstances of the case, courts will analyze those questions either through the lens of a motion to dismiss standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure or a motion for summary judgment standard under Rule 56.

The motion to dismiss standard applies to motions to compel arbitration "[w]here the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted); *see Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 115 (3d Cir. 2017).

> [E]ven where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations.

*Venson v. Pro Custom Solar LLC*, No. 19-cv-19227, 2022 WL 4596725, at *6 (D.N.J. Sept. 30, 2022) (citations omitted).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Lloyd v. Retail Equation, Inc.*, No. 21-cv-17057, 2022 WL 18024204, at *7 (D.N.J. Dec. 29, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In contrast, the motion for summary judgment standard applies if "(1) the complaint—and documents relied on in the complaint—are unclear regarding whether the parties agreed to arbitrate; or (2) the non-moving party 'has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue.'" *Brito v. LG Elecs. USA, Inc.*, No. 22-cv-5777, 2023 WL 2675132, at *4 (D.N.J. Mar. 29, 2023) (quoting *Guidotti*, 716 F.3d at 774-76).  Under these circumstances, a court should authorize limited discovery on the question of arbitrability and entertain

a renewed motion to compel arbitration under the summary judgment standard. *Guidotti*, 716 F.3d at 776.

## III.   ANALYSIS[2]

### A. Motion to Compel Arbitration

The Court is persuaded that the Motion should be evaluated under the motion to dismiss standard.  Although Plaintiff's Complaint does not attach the language of the arbitration agreement or the Limited Warranty, it repeatedly references the Limited Warranty upon which at least a portion of Plaintiff's New Jersey Consumer Fraud Act claim is based.  *See* Compl. ¶ 87.  In the Complaint, Plaintiff alleges that the Earbuds were defective and that she attempted to contact Defendant to resolve the issues allegedly caused by the Earbuds.  Compl. ¶¶ 23-26.  Plaintiff also alleges that, despite attempting to avail herself of the Limited Warranty, Defendant "unconscionably limit[ed] the warranty to not cover" the alleged defects in violation of the New Jersey Consumer Fraud Act.  *Id.* ¶¶ 64, 87.  Because Plaintiff's New Jersey Consumer Fraud Act claim is derived, in part, from the Limited Warranty, the Court may consider the Limited Warranty as well as the arbitration agreement that was referenced on the exterior and interior of the Earbuds packaging box and appeared on the very same webpage as the Limited Warranty.  *See Lloyd*, 2022 WL 18024204, at *7 ("[Plaintiff's] theory of liability therefore necessarily implicates these provisions

---

[2] A motion to compel arbitration and stay proceedings is not dispositive.  *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 561 F. App'x 131, 133-34 (3d Cir. 2014).  Further, as discussed below, this Court does not address the merits of Defendant's request to dismiss Plaintiff's class claims, but instead reserves this question for the arbitrator.  Accordingly, the Court issues this decision as an Opinion and not a report and recommendation.

incorporated in the [terms of use], and the [terms of use] contains the subject arbitration agreement.  These circumstances weigh decidedly in favor of applying the standard under Rule 12(b)(6).").  Notably, Plaintiff does not contest the language of the Limited Warranty, the arbitration agreement's appearance on the same webpage as the Limited Warranty, or the references to the arbitration agreement on the outside and inside of the box.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) (citation omitted) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" and that such consideration does not require a court to convert the motion into one for summary judgment because, having relied on the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished").

The Court further notes that even if a consumer such as Plaintiff was concerned with only reviewing the language of the Limited Warranty and did not actually select the "Arbitration Agreement" bubble on the webpage, the consumer was nevertheless immediately presented with language at the top of the webpage alerting them to the arbitration agreement, how to opt out of the agreement, and where to find the terms of same (appearing just below).  It should also be noted that the arbitration agreement itself referenced the Limited Warranty, expressly stating that "all disputes between [Plaintiff] and [Defendant] that in any way relate to, or arise from, the standard limited warranty . . . shall be resolved exclusively through

final and binding arbitration, and not by a court or jury."  Cantwell Decl. Ex. 3 at 2 (emphasis omitted).  For these reasons, the Court will evaluate the Motion under the motion to dismiss standard.[3]  *See Doyle*, 2018 WL 1169121, at *2 (evaluating a motion to compel arbitration under the motion to dismiss standard because the plaintiff's claims derived from an agreement containing the arbitration provision and the plaintiff did not request discovery or otherwise allege that same was required to interpret the agreement).  That means Plaintiff "must come forward with allegations that make out a plausible claim that the arbitration agreement should not apply." *Discovery House v. Advanced Data Sys RCM, Inc.*, No. 19-cv-21602, 2020 WL 6938353, at *3 (D.N.J. Nov. 25, 2020); *see also Guidotti*, 716 F.3d at 774 (noting that, under the motion to dismiss standard, a plaintiff must plead a claim that, if true, would provide a basis for rejecting the affirmative defense of arbitrability).

### 1. *Whether a Valid Arbitration Agreement Exists Between the Parties*

The parties dispute whether a valid arbitration agreement exists.  To determine the validity of an arbitration agreement, the Court must look to ordinary

---

[3] Although Plaintiff argues the Motion should be evaluated under the summary judgment standard, Plaintiff has not shown that that the Complaint or the documents she relies on in the Complaint "are unclear regarding whether the parties agreed to arbitrate." *Brito*, 2023 WL 2675132, at *4.  Likewise, Plaintiff has not "responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Id.* (citation omitted).  As already noted, Plaintiff's New Jersey Consumer Fraud Act claim is based in part on the Limited Warranty which itself appears on the same webpage as the arbitration agreement.  Cantwell Decl. Ex. 3.  Moreover, the top of that webpage expressly notified consumers that they will be subject to an arbitration agreement by, among other things, using the product.  *Id.* Turning next to whether Plaintiff has alleged sufficient facts to place the agreement to arbitrate in issue, Plaintiff contends that she did not see the arbitration agreement and, therefore, there was no mutual assent to its terms.  ECF No. 14 at 8-14.  These arguments, however, are insufficient to "place the agreement to arbitrate in issue" because Plaintiff's subjective awareness of the provision does not preclude the formation of a binding arbitration agreement.  As discussed in Section III.A.1, once a party has reasonable notice, she is "bound by those terms, even if [s]he failed to read them."  *Noble*, 682 F. App'x at 116 (citations omitted).

principles of state contract law.  *See Noble*, 682 F. App'x at 116.  The parties do not dispute that New Jersey law applies in this case.  *See* ECF No. 10-1 at 7-8; ECF No. 14 at 6-7.  Under New Jersey law, the requisite elements of a contract are offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *See Noble*, 682 F. App'x at 116 (applying New Jersey law).

Mutual assent "requires that the parties have an understanding of the terms to which they have agreed." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 313 (N.J. 2014).  This means that any contractual "waiver-of-rights provision must reflect that the party has agreed clearly and unambiguously" to those terms.  *Id.* (quoting *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003)).  Arbitration provisions are no exception.  *Id.* at 314.  It should be noted, however, that "[n]o particular form of words is necessary to" establish a waiver of rights.  *Id.*  Rather, a consumer contract "will pass muster when phrased in plain language that is understandable to the reasonable consumer."  *Id.*; *see also Beture v. Samsung Elecs. Am., Inc.*, No. 17-cv-5757, 2018 WL 4621586, at *5 (D.N.J. July 18, 2018).  Further, "[o]nce there is reasonable notice, a party is bound by those terms, even if he failed to read them." *Noble*, 682 F. App'x at 116 (citations omitted).  To ensure reasonable notice, the agreement must "appear to be a contract" and the terms must be "called to the attention of the recipient."  *Id.* (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)).

Plaintiff asserts that the arbitration agreement at issue was not reasonably conspicuous or did not otherwise call Plaintiff's attention.  ECF No. 14 at 8.  Although

Plaintiff acknowledges that the back of the packaging box mentioned the arbitration agreement, Plaintiff argues that this mention "is buried within other fine print." *Id.* at 9. Plaintiff notes that the box also "utilizes at least five different font sizes" to communicate the product's features and other information to the consumer, but the "smallest font" was selected for the disclosure regarding terms and conditions as well as the arbitration agreement. *Id.* Next, Plaintiff argues that the terms and conditions booklet is "purposefully concealed" within a "false top" underneath the lid of the packaging box. *Id.* at 10. This design, Plaintiff argues, was intended to deliberately prevent a consumer from discovering the booklet. *Id.* at 11. Indeed, in her declaration, Plaintiff states that she "did not see the language embedded within the fine print of the bottom of the box . . . and likewise did not see the pamphlets that were hidden within a sub-box and secured to the underside of the box cover" until directed by counsel to search for the pamphlet there. Plaintiff's Decl. ¶ 4, ECF No. 14-1.

Concerning the substance of the disclosures on the back of the box and in the booklet, Plaintiff further contends that both are impermissibly vague as they do not explain what an arbitration agreement is or that consumers would be waiving their legal rights by failing to opt out of the agreement. ECF No. 14 at 10-12. Finally, Plaintiff notes that, when a consumer actually attempts to connect the Earbuds to a smartphone, the phone's screen does not alert users to the product's terms and conditions or the arbitration agreement. *Id.* at 13.

Defendant counters that the disclosures on the back of the box and in the pamphlet provided Plaintiff reasonable notice of the arbitration agreement such that a contract was formed.  ECF No. 10-1 at 14.  In support of its argument, Defendant points to *Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-cv-10238, 2021 WL 5578736, at *8-9 (D.N.J. Nov. 29, 2021).  In *Vasadi*, the Magistrate Judge granted a motion to compel arbitration applying New Jersey law under circumstances very analogous to this case.  There, the court found that language contained on the exterior label of a smartphone box and in a pamphlet inside the box, which was nearly identical to the language in dispute here, provided reasonably conspicuous notice to Plaintiff and established assent to an arbitration agreement.  ECF No. 15 at 4.  Defendant further argues that the box and pamphlet's reference to "terms and conditions" sufficiently alerted a consumer of the existence of binding conditions attendant to the purchase or use of the Earbuds.  *Id.* at 8-9.

When analyzing a motion to dismiss, the Court may consider a "proffered declaration and exhibits in determining whether there existed reasonable notice and assent to the arbitration agreement."  *Lloyd*, 2022 WL 18024204, at *8 (collecting cases).  That is more so where, as here, Plaintiff made concessions in her declaration and exhibits. *See Breiding v. Eversource Energy*, 939 F.3d 47, 49 (1st Cir. 2019) (noting that courts may consider "concessions in the complainant's response to the motion to dismiss").  Specifically, the Defendant has submitted a declaration that includes an image of the outside of the box and the booklet contained inside the box.

14

*See* Cantwell Decl. Exs. 1, 2.  And Plaintiff's motion papers also include images of these same items without contesting their authenticity.  *See generally* ECF No. 14.

After considering the declaration and the images of the box and booklet, the Court finds *Vasadi* persuasive and agrees with Defendant that Plaintiff received reasonable notice of the arbitration agreement sufficient to bind Plaintiff to its terms. As the *Vasadi* court observed, "'shrinkwrap agreements' through which notice of contractual terms is provided on the exterior physical packaging containing the product" are well-established under Third Circuit law.  *Vasadi*, 2021 WL 5578736, at *9.   In *Vasadi*, the exterior label of the box noted that the "Packaging Contains . . . Terms and Conditions" and continued:

> IMPORTANT INFORMATION
>
> If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty, and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.

*Vasadi*, 2021 WL 5578736, at *2.  Ultimately, the *Vasadi* Court found that this disclosure "contained all the features of valid shrinkwrap agreements." *Id.* at *9.  In addition to noting that terms and conditions applied to the purchase, "the box label made express reference to an arbitration agreement, provided the location where full terms could be accessed and advised the consumer that certain, identified actions would constitute assent to those terms, all under a capitalized and bold heading reading 'IMPORTANT INFORMATION.'"   *Id.*   The disclosure also directed

consumers how to review the full terms of the arbitration agreement and how to opt out of the same.  *Id.*

A different result is not warranted here.  In *James v. Global TelLink Corp.*, the Third Circuit stated that shrinkwrap agreements have been deemed enforceable as binding contracts where the consumer "received physical copies of the terms and conditions upon opening the products, and their subsequent use of the products manifested assent to the enclosed terms."  852 F.3d 262, 267 (3d Cir. 2017) (citations omitted) (applying New Jersey law).  Here, the back of the box containing the Earbuds reads: "IMPORTANT INFORMATION: This product is subject to Samsung terms & conditions (including an arbitration agreement); if you open the package, use or retain the device, you accept the terms & conditions.  Information about your rights, obligations, opt-out opportunities & full terms [is available] at www.samsung.com/us/Accessory-Legal & the enclosed materials."  Cantwell Decl. ¶ 17; Cantwell Decl. Ex. 1; ECF No. 15 at 9.  This disclosure is unambiguous.  It directs consumers to the internal booklet (*i.e.*, "the enclosed materials") and a webpage where the arbitration agreement, instructions on how to opt out of the agreement, and other terms and conditions relating to the product can be found.  Like the label on the smartphone box in *Vasadi*, the exterior of the Earbuds box in this case "contained all the features of valid shrinkwrap agreements."  2021 WL 5578736, at *9.  The Court therefore holds that the disclosure on the exterior of the box, alone, provided Plaintiff with reasonable notice of the terms and conditions, including the arbitration agreement.  Further, Plaintiff's opening and use of the Earbuds

16

sufficiently manifested her assent to be bound by those terms even if, as she asserts, she did not read them.  *Noble*, 682 F. App'x at 116 ("Once there is reasonable notice, a party is bound by those terms, even if he failed to read them.").  The Court could conclude its analysis here, having found that the exterior of the box acts as a shrinkwrap agreement to which Plaintiff is bound.  For the sake of completion, however, the Court will also address the "Terms and Conditions" booklet.

A review of the booklet packaged inside the Earbuds box reinforces the finding that Plaintiff was provided reasonable notice of the arbitration agreement.  The very first page of the booklet was titled "Terms and Conditions," words that are "unambiguously associated with contracts," *Vasadi*, 2021 WL 5578736, at *10, and which instructed the consumer to "[r]ead this document" prior to using the Earbuds.  Cantwell Decl. ¶ 21; Cantwell Decl. Ex. 2.  This same page also stated in no uncertain terms that "opening the packaging, use, or retention of the Product constitutes acceptance of these Terms and Conditions."  Cantwell Decl. ¶ 21; Cantwell Decl. Ex. 2.  Further, the second page of the booklet titled "Important legal information" in large, bolded font, expressly notified consumers that the Earbuds were "subject to a binding arbitration agreement between you and [Defendant]," and clearly outlined separate methods for a consumer to opt out of the arbitration agreement either by phone or email.  Cantwell Decl. Ex. 2.  The booklet next provided a webpage where the full terms of the arbitration agreement, Limited Warranty, and other terms and conditions could be found.  *Id.*

Coupling this language with the disclosures appearing on the first page of the booklet, the Court finds that the booklet provided reasonable and conspicuous notice to consumers (including Plaintiff) that by using the Earbuds they would enter into a bilateral agreement and be subjected to an arbitration agreement unless they opted-out.[4]  Considering the unambiguous nature of these disclosures along with the instructions that directed consumers to the full text of the arbitration agreement, the Court finds unavailing Plaintiff's arguments concerning the size of the font on the box and the lack of a definition for the phrase "arbitration agreement."  The Court also finds unconvincing Plaintiff's argument that Defendant purposefully concealed the booklet within a "false top."  The exterior of the box plainly stated that "[i]nformation about your rights, obligations, opt-out opportunities & full terms" were available in "the enclosed materials," which alerted consumers to additional information contained inside the package.  Cantwell Decl. Ex. 1.  As Defendant also

_____

[4] In support of Plaintiff's argument that she lacked reasonable notice of the arbitration agreement, Plaintiff relies on the Third Circuit's decision in *Noble*, 682 F. App'x 113.  *Noble*, however, is distinguishable.  There, the Third Circuit held that the plaintiff lacked reasonable notice of an arbitration agreement after purchasing a Samsung smartwatch.  *Id.* at 114.  The box the smartwatch was packaged in contained a 143-page booklet titled "Health and Safety and Warranty Guide."  *Id.*  The cover of the guide directed consumers to "[p]lease read this manual before operating your device and keep it for future reference."  *Id.*  The arbitration clause at issue in *Noble* appeared on page ninety-seven of the booklet.  *Id.* at 114-15.  The Third Circuit held that the outside of the booklet at issue "did not appear to be a bilateral contract, and the terms were buried in a manner that gave no hint to a consumer that an arbitration provision was within."  *Id.* at 116.  Further, the booklet was referred to as a "manual," and did not suggest to consumers that terms and conditions could be found inside.  *Id.* at 117.  Here, unlike in *Noble*, the booklet at issue is only six pages, is titled "Terms and Conditions," and even notified consumers on its cover page that "opening the packaging, use, or retention of the [Earbuds] constitutes acceptance of these Terms and Conditions."  Cantwell Decl. Ex. 2.  The existence of the arbitration agreement here is disclosed on the outside of the box and is not buried "within a dense and blandly titled manual."  *Vasadi*, 2021 WL 5578736, at *10.  Finally, the *Noble* Court expressly held that the facts before it distinguished the case from "those in which shrinkwrap . . . agreements were found to be binding."  682 F. App'x at 117.  Here, however, as previously discussed, the Earbuds box and booklet "contained all the features of valid shrinkwrap agreements."  *Vasadi*, 2021 WL 5578736, at *9.

aptly notes, the booklet was contained in an envelope in the top of the packaging box along with the "Buds Pro Quick Start Guide which provides users with instructions for charging, connecting, wearing, and using their Buds Pro."  ECF No. 15 at 12.  At minimum, here, as in *Vasadi*, "a fairly simple inspection of the box would reveal" the reference to the "enclosed materials" or the booklet itself.  2021 WL 5578736, at *10.[5] Accordingly, the Court holds that Defendant has demonstrated that a valid arbitration agreement exists here.

### 2. Whether Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

The Court must next address whether Plaintiff's claims fall within the scope of the parties' arbitration agreement; that is, whether Plaintiff's claims are arbitrable.  Generally, this question "turns on whether the parties have delegated to the arbitrator the power to decide the issue of arbitrability."  *Beture*, 2018 WL 4621586, at *10 (citation omitted).  The Supreme Court has recognized the right of parties to have an arbitrator decide these "gateway" questions such as "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (collecting cases).  Although there is a general presumption that courts should determine whether a plaintiff's claims fall within the scope of the parties' arbitration agreement, *Deem v. Infiniti Fin. Servs.*, No. 21-cv-20105, 2022 WL 2347170, at *4

---

[5] The Court need not address Plaintiff's arguments about Defendant's alleged failure to include a notice concerning the terms and conditions during the set-up process on a smartphone.  ECF No. 14 at 12-13.  As already noted, the disclosures on the box and within the booklet were sufficient to provide reasonable notice that consumers would enter into a bilateral agreement by using the Earbuds, which Plaintiff here did.

(D.N.J. June 29, 2022), where an arbitration agreement delegates this question to an arbitrator, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Such a clause delegating this authority to the arbitrator must be "clear, precise, and entirely unequivocal, free from ambiguity or multiple interpretations," to defeat the presumption of judicial determination. *Wolf v. Nissan Motor Acceptance Corp.*, 10-cv-3338, 2011 WL 2490939, at *4 (D.N.J. June 22, 2011); *see also Deem*, 2022 WL 2347170, at *4.

Here, the arbitration agreement contains a delegation clause that reserved for the arbitrator "all issues of interpretation and application of [the arbitration] agreement." Cantwell Decl. Ex. 3. The arbitration agreement also delegated the question of arbitrability to the arbitrator by incorporating the American Arbitration Association's rules into the agreement, "one of which delegates the gateway issue of arbitrability to the arbitrator." *Carrone v. UnitedHealth Grp. Inc.*, No. 20-cv-5138, 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020); *see also* ECF No. 10-1 at 17. Plaintiff does not challenge the delegation clause and, in any event, the Court finds that this language is sufficiently "clear, precise, and entirely unequivocal, free from ambiguity or multiple interpretations" to overcome the presumption of judicial determination of arbitrability. *Wolf*, 2011 WL 2490939, at *4. "Because the parties clearly and unmistakably delegated" to the arbitrator the question of whether Plaintiff's claims fall within the scope of the arbitration agreement, the Court will reserve this determination for the arbitrator. *Beture*, 2018 WL 4621586, at *10.

Having found that a valid arbitration agreement exists and that it is for the arbitrator to determine whether Plaintiff's claims fall within the scope of the arbitration agreement, this Court finds it appropriate to grant Plaintiff's motion to compel arbitration. *Vasadi*, 2021 WL 5578736, at *7, 10-11.

**B. Plaintiff's Class Claims**

In the Motion, Defendant also asks the Court to dismiss Plaintiff's class action claims, arguing that, per the terms of the arbitration agreement, Plaintiff waived her right to bring her claims as part of a class action. ECF No. 10-1 at 19--20. Plaintiff's sole response is that because there was no assent to the arbitration agreement in the first instance, she is not bound by the class waiver provision. ECF No. 14 at 14-15.

Courts have generally deemed arbitration agreements containing waivers of class actions valid. *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-cv-16883, 2019 WL 3336421, at *3 (D.N.J. July 25, 2019) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011)). The Third Circuit in *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 329 (3d Cir. 2014), considered "whether a district court, rather than an arbitrator, should decide if an agreement to arbitrate disputes between the parties to that agreement also authorizes classwide arbitration." The Court held that it is "for a court to decide [that question] unless the parties unmistakably provide otherwise." *Id.* at 335-36.

The arbitration agreement at issue here provides that any dispute relating to or arising from the Limited Warranty or "the sale, condition, or performance of the product . . . shall not be combined or consolidated with a dispute involving any other

person's or entity's product or claim.  Specifically, without limitation of the foregoing, you shall not under any circumstances proceed as part of a class action."  Cantwell Decl. Ex. 3.  This provision does not specify whether a court or an arbitrator should make determinations concerning class waiver.  Given the broad nature of the delegation clause, however, which refers "*all* issues of interpretation and application of [the arbitration agreement] to the arbitrator," the Court finds that the parties clearly and unmistakably agreed to arbitrate the question of whether Plaintiff has waived her right to assert class claims.  *Id.*  Resolution of this issue is thus properly reserved for the arbitrator.  *See, e.g.*, *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-cv-3642, 2022 WL 407396, at *14 (E.D. Pa. Feb. 9, 2022) (citation omitted) ("[B]ecause the Court has found that the delegation clause in [the agreement] is valid and delegates questions of arbitrability to the arbitrator, and therefore compels [the parties] to arbitration, the Court cannot then also decide the validity of the class action waiver.").

### C. Defendant's Request to Stay this Action

Finally, Defendant asks the Court to stay proceedings pending the completion of arbitration.  ECF No. 10-1 at 21.  Plaintiff again responds that, because she did not assent to the arbitration agreement, this request should also be denied.  ECF No. 14 at 15-16.  As the Third Circuit has observed, "[t]he FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement."  *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing 9 U.S.C. §§ 3, 4, 206).  Because this Court has already determined that

Defendant's motion to compel arbitration should be granted, this Court finds it appropriate to also stay all proceedings pending completion of arbitration.

## IV.  CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendant's motion to compel arbitration, subject to the arbitrator finding that Plaintiff's claims fall within the scope of the arbitration agreement, and to stay this action pending arbitration. The Court reserves for the arbitrator the question of whether Plaintiff waived her right to assert class claims.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: June 26, 2023

23